UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOSE BURGOS SANTIAGO,          )
                              )
          Plaintiff,          )
                              )
     v.                       )          No.  4:19 CV 01 CDP
                              )
ANDREW M. SAUL, Commissioner  )
of Social Security,[1]        )
                              )
          Defendant.          )

## MEMORANDUM AND ORDER

Plaintiff Jose Burgos Santiago brings this action under 42 U.S.C. § 405

seeking judicial review of the Commissioner's final decision denying his claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is not supported

by substantial evidence on the record as a whole, I will reverse the decision and

remand the matter for further proceedings.

### Procedural History

On April 6, 2016, the Social Security Administration denied Santiago's

January 2016 application for DIB, in which he claimed he became disabled on

December 14, 2015, because of depression, anxiety, insomnia, ulcerative colitis,

---

[1]  On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security.  Pursuant to
Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as
defendant in this action.

back pain, and hypertension.  A hearing was held before an administrative law judge (ALJ) on February 16, 2018, at which Santiago and a vocational expert testified.  On May 3, 2018, the ALJ denied Santiago's claim for benefits, finding the vocational expert's testimony to support a finding that Santiago could perform work that exists in significant numbers in the national economy.  On November 1, 2018, upon review of additional evidence, the Appeals Council denied Santiago's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Santiago claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Santiago argues that the ALJ erred in assessing his residual functional capacity (RFC) by improperly evaluating the opinion evidence of record as well as his subjective complaints.  Santiago also contends that with the ALJ discrediting his treating psychiatrist's medical opinion, there was no record evidence of Santiago's functional abilities from which the ALJ could assess his RFC.  For the reasons that follow, I will reverse the ALJ's decision and remand the matter to the Commissioner for further proceedings.

## Relevant Medical Records and Other Evidence Before the ALJ

Santiago suffers from depression and anxiety.  Medical history notes dated December 2014 on an unrelated matter show that he was then taking several

psychotropic medications, including clonazepam, venlafaxine, zolpidem, and divalproex. During a hospitalization in May 2015 for what was interpreted to be suicidal ideation, hospital personnel noted that Santiago had been diagnosed with depression five years prior and had begun treatment with psychiatrist Dr. John Canale at that time.

In January 2016, Dr. Canale referred Santiago to St. Mary's Behavioral Health for participation in its intensive outpatient treatment program (IOP) for mental illness. Santiago attended sessions three times a week and experienced some short-lived improvement. Santiago attended fourteen sessions through February 5, 2016. He was discharged from the program on February 11 after telling IOP that he would be unable to attend for a couple of weeks because of out-of-state travel to visit an ill relative.

The record is silent until January 2017 at which time Dr. Canale prescribed Zoloft for Santiago and then zolpidem in February 2017. Santiago thereafter began seeing Dr. Canale regularly, and indeed weekly from April through December 2017. Throughout this period, Santiago's depressive symptoms waxed and waned. While Santiago continued to report irritability, anxiety, sleep issues, depression, and lack of motivation, there were isolated episodes of improvement where he reported increased activity and having better days. Throughout this period, Dr. Canale prescribed and adjusted several medications, including Lorazepam,

zolpidem, Lexapro, Ativan, clonazepam, Ambien, and sertraline.

Beginning in May 2017, Santiago participated in a medication study protocol whereupon he was administered Ketamine once a week.[2]  In October 2017, Santiago reported to Dr. Canale that he was unsure if Ketamine provided any benefit in that its effects did not last long enough.  Santiago reported that he had one to three good days after being given the medication but that his depression was "still there" and he experienced anxiety as the medication started to "wind down." Dr. Canale nevertheless continued Santiago's participation in the protocol and continued to adjust his other medications.

In December 2017, Dr. Canale completed a Mental Medical Source Statement (Mental MSS) wherein he reported that Santiago suffered from major depressive disorder that caused Santiago to experience mild to marked limitations in understanding and memory, social interaction, and adaptation; and mild to extreme limitations in sustained concentration and persistence.  Dr. Canale opined that Santiago's mental impairment would cause him to miss work or leave work early four days per month and would cause him to be off task at least twenty-five percent of the time.

_____

[2] Ketamine is an intravenous, rapidly-acting antidepressant used for persons with treatment-resistant depression. *See Highlight:  Ketamine:  A New (and Faster) Path to Treating Depression*, Nat'l Institute of Mental Health, https://www.nimh.nih.gov/about/strategic-planning-reports/highlights/highlight-ketamine-a-new-and-faster-path-to-treating-depression.shtml (last reviewed Jan. 30, 2020).

Evidence submitted to the Appeals Council shows that Dr. Canale continued to treat Santiago on a weekly basis through July 2018. (Tr. 33-36, 40-52.) Treatment notes from December 2017 to July 2018 show that Santiago repeatedly felt more depressed, had a depressed affect, did not do much, had decreased interest, and had bad weeks. He reported feeling a little better on seven isolated occasions during this seven-month period. Dr. Canale continued Santiago on his treatment regimen during this period, including participation in the study protocol. Cymbalta was added to the medication regimen in February 2018.

With respect to additional medical records and other evidence of record, I adopt Santiago's recitation of facts set forth in his Statement of Facts (ECF 9-1) and note that they are admitted by the Commissioner (ECF 14-1). I also adopt the factual statements set out in the Commissioner's Additional Material Facts (ECF 14-1), which Santiago admits in their entirety (ECF 15-1). These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.  Legal Standard

To be eligible for DIB under the Social Security Act, Santiago must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the

claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Id.* I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

B.    The ALJ's Decision

The ALJ found that Santiago met the requirements of the Social Security Act and would continue to meet them through December 31, 2021. The ALJ also found that Santiago had not engaged in substantial gainful activity since December 14, 2015, the alleged onset date of disability. The ALJ found that Santiago's major depressive disorder was a severe impairment but that it did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-16.)[3] The ALJ found that Santiago had the RFC to perform a full range of work at all exertional levels, except that he

> can never work at unprotected heights, near moving mechanical parts, or operate a motor vehicle. He is limited to performing simple, routine, and repetitive tasks. He is limited to making simple work-related decisions. He can interact with supervisors or coworkers on an occasional basis and no interaction with the public.

(Tr. 16.)

---

[3] The ALJ also found that Santiago's other claimed impairments were not severe. (Tr. 14.) Santiago does not challenge this determination.

The ALJ determined that Santiago's RFC precluded him from performing his past relevant work as an inventory manager, order clerk, aerial photographer, dispatcher, and programmer. (Tr. 20.) Considering Santiago's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Santiago could perform other work as it exists in significant numbers in the national economy, and specifically, as a laundry worker, industrial cleaner, and dishwasher. The ALJ thus found Santiago not to be under a disability from December 14, 2015, through the date of the decision. (Tr. 21.)

C.    RFC Analysis

In assessing Santiago's RFC, the ALJ accorded little weight to Dr. Canale's December 2017 Mental MSS and also found that Santiago's subjective complaints were inconsistent with the record. Santiago challenges these determinations and argues that as a result of the ALJ's treatment of this evidence, there is no substantial evidence of record to support the ALJ's RFC findings. For the following reasons, I agree.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description

of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, the ALJ is "required to consider at least some supporting evidence from a [medical professional]" and "should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). *See also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell*, 259 F.3d at 712). The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1.    *Evaluation of Symptoms*[4]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  *See also* 20 C.F.R. § 404.1529.  If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). An ALJ must do more than merely invoke *Polaski* to insure "safe passage for his or her decision through the course of appellate review." *Harris v. Shalala*, 45 F.3d 1190, 1193 (8th Cir. 1995). Instead, he "must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski*[.]" *Cline*, 939 F.2d at 565; *see also Renstrom,* 680 F.3d at 1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir. 1998). It is not enough to merely state that inconsistencies are said to exist. *Cline*, 939 F.2d at 565. While an ALJ need not explicitly discuss each *Polaski* factor, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). The ALJ failed to do that here.

The ALJ stated that he considered the relevant factors and concluded that Santiago's allegations of disabling symptoms and limitations were not generally consistent with the evidence of record. Specifically, the ALJ found that Santiago's testimony that he experienced uncontrolled anger as a side effect of his medication was inconsistent with the medical treatment notes that reported no side effects and, further, that the record showed only one documented episode of uncontrolled anger. The ALJ also found that the record showed that Santiago's depressive symptoms improved with treatment and that he was able to attend treatment

sessions up to three times a week.  (Tr. 19.)  These reasons do not provide a sufficient basis upon which to discount Santiago's subjective statements of symptoms.

First, Santiago testified to some of his depressive symptoms, including that he shuts out family and friends, does not want to talk to anyone, isolates himself, and has out-of-control emotions.  (Tr. 60.)  He then testified, "[A]nd then the treatment I was getting, I would get new medication and the side effects would be horrible.  My moods would change completely from this to being extremely angry or enraged, which is not my usual self."  (*Id.*)  The ALJ found this testimony regarding uncontrolled anger as a medication side effect to be inconsistent with treatments notes that reported no side effects.  While the record shows that indeed, Dr. Canale noted during treatment sessions in 2017 that Santiago did not experience any medication side effects, he also noted Santiago's observed irritability and documented Santiago's wife's reports of irritability.  (*See* Tr. 501-05.)  So, while the record supports the ALJ's finding that Santiago's testimony of uncontrolled anger *as a medication side effect* was inconsistent with treatment notes, the record nevertheless shows that Santiago experienced documented irritability, which was observed by and reported to his treating psychiatrist.

The ALJ also determined that Santiago's testimony that his symptoms did not respond to medication was inconsistent with the record that showed

improvement with treatment. Incongruently, however, the ALJ acknowledges elsewhere in his decision that despite some improvement with treatment, Santiago continued to experience depressive symptoms, including indifferent mood, increased and persistent anxiety, tearfulness, fatigue, decreased motivation, and irritability. (*See* Tr. 18-19.) And to the extent Santiago did experience any improvement, the record shows it was sporadic and short-lived. From June to September 2017, Santiago reported to Dr. Canale that his mood had slightly improved, that he had engaged in more activities, and he was having some better days. Notably, Dr. Canale observed during this limited period of improvement that Santiago nevertheless continued to be irritable, continued to have decreased motivation, continued to feel depressed, and experienced increased fatigue. And from late October through December 2017, Dr. Canale observed that Santiago's anxiety had actually increased and that Santiago was feeling more depressed. (Tr. 495-97.) In addition, as noted above, Dr. Canale's continued adjustments to Santiago's medications and Santiago's participation in the Ketamine protocol resulted in only limited and short-lived improvement. While an impairment that can be controlled by treatment or medication is inconsistent with a claim that the impairment is disabling, *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014), it cannot be said on the record here that Santiago's mental impairment was controlled. *See Porter v. Colvin*, No. 4:14-CV-00813-NKL, 2015 WL 3843268, at

*6 (W.D. Mo. June 22, 2015) (claimant's need for ongoing changes to prescription regimen suggests that, even with treatment, symptoms were not under control).

Given the limited nature of Santiago's "improvement," it appears that the ALJ not only failed to acknowledge the substantial medical evidence of record that supported Santiago's statements that treatment was ineffective, but he also failed to recognize the instability of mental impairments and their waxing and waning nature after manifestation. *See Lillard v. Berryhill*, 376 F. Supp. 3d 963, 984 (E.D. Mo. 2019). "Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods," and symptom-free intervals do not necessarily negate a finding of disability when a mental disorder is the basis of the claim. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal quotation marks and citation omitted); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Here, the ALJ's selective review of the record for positive notations of improvement does not support his determination to discount Santiago's testimony that he continued to experience depressive symptoms despite treatment and medication.

Finally, other than these references to the effectiveness and side effects of

Santiago's medication and treatment, the ALJ's decision lacks any meaningful analysis of the other relevant factors in considering Santiago's statements of symptoms, that is, Santiago's prior work record; his daily activities; the duration, frequency, and intensity of his symptoms; any precipitating and aggravating factors; and any functional restrictions. Without any meaningful discussion of the relevant factors, the ALJ's conclusory statement that consideration of the factors shows Santiago's subjective allegations to be inconsistent with the record is insufficient to satisfy the mandate of *Polaski*. *See Cline*, 939 F.2d at 565, 569; *Harris*, 45 F.3d at 1193.

2. *Opinion Evidence*

Dr. Canale, Santiago's treating psychiatrist, completed a Mental MSS in December 2017 in which he opined, *inter alia*, that Santiago's major depressive disorder caused marked limitations in his ability to understand, remember, and carry out detailed instructions; to sustain an ordinary routine without special supervision; to complete a normal workday and workweek without interruption from psychologically-based symptoms; and to respond appropriately to changes in the work setting. Dr. Canale further opined that Santiago's impairment caused extreme limitations in his ability to perform at a consistent pace without an unreasonable number and length of rest periods; to maintain attention and concentration for extended periods; to perform activities within a schedule; and to

maintain regular attendance.  Dr. Canale reported that Santiago's mental impairment would cause him to miss or leave work early about four days a month, would interfere with his attention, and would cause him to be off task at least twenty-five percent of the time.  (Tr. 510-11.)

The ALJ assigned little weight to Dr. Canale's MSS opinions, reasoning that they were unsupported by his treatment notes given that the notes documented improved mood, decreased irritability, and increased activities and otherwise lacked specificity.  (Tr. 19.)  Santiago claims that the ALJ erred in assigning only little weight to Dr. Canale's opinions and that as a result of this action, the record lacked sufficient medical evidence of his functional abilities from which the ALJ could assess his RFC.  Santiago's argument is well taken.

"A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record."  *Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) (internal quotation marks and citation omitted).  *See also* 20 C.F.R. § 404.1527(c)(2) (2018).[5]  "Even if not entitled to controlling weight, such opinions typically are entitled to at least substantial weight, but may be given limited weight if they are conclusory or inconsistent with the record."  *Schwandt,*

---

[5] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because the claim under review here was filed before March 27, 2017, I apply the rules set out in 20 C.F.R. § 404.1527.

926 F.3d at 1011 (internal quotation marks and citation omitted). When controlling weight is not assigned, the ALJ assigns an otherwise appropriate weight by considering the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record, the treating source's specialty, and other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (3)-(6). Under the Regulations, the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Here, the reasons provided by the ALJ to accord only little weight to Dr. Canale's opinions appear to run afoul of the Regulations. The Regulations state that *more weight* must be given to the medical opinions from treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence *that cannot be obtained from the objective medical findings alone*[.]" 20 C.F.R. § 404.1527(c)(2) (emphasis added). And, upon consideration of the § 404.1527(c) factors, Dr. Canale's opinion – while not necessarily entitled to controlling weight – would appear to be entitled to more than little weight. When Dr. Canale completed the Mental MSS in December 2017, he had been Santiago's treating psychiatrist for at least seven

years and was in the midst of seeing Santiago on a weekly basis for at least nine consecutive months. Dr. Canale prescribed several medications, adjusted them throughout the course of treatment, and included Santiago in a depression treatment protocol from which Santiago obtained only short-term relief. *See* 20 C.F.R. § 404.1527(c)(1), (2), (5). While Dr. Canale did not provide specific evidence in the MSS to support his opinions and the opined limitations are not detailed in his treatment notes, I cannot say that Dr. Canale's opinions are inconsistent with other substantial evidence of record. Nor does the ALJ say so.

And the § 404.1527(c)(6) "other factors" articulated by the ALJ, that is, documented improvement and lack of specificity in Dr. Canale's treatment notes, do not outweigh the other specific § 404.1527(c) factors in the circumstances of this case, as described above. *See Porter*, 2015 WL 3843268, at *6. Further, as noted earlier, the ALJ's citation to treatment records that show improved mood, decreased irritability, and increased activities in an apparent suggestion that Dr. Canale's opinion is inconsistent with his treatment notes ignores the waxing and waning of symptoms of mental impairments. *Lillard*, 376 F. Supp. 3d at 984. "[B]ecause 'it is extremely difficult to predict the course of mental illness,' it is [] not appropriate to discount Dr. [Canale's] opinions by taking a myopic view of certain records over others." *Norwood v. Saul*, No. 4:18-CV-01104-SNLJ, 2019 WL 4221524, at *5 (E.D. Mo. Sept. 5, 2019) (quoting *Andler*, 100 F.3d at 1393).

*See also Shontos v. Barnhart*, 328 F.3d 418, 426-427 (8th Cir. 2003) (holding the ALJ erred in discounting the longitudinal perspective of treating mental health providers despite the record being arguably "deficient in documentation to support their opinions"). Accordingly, while I agree that the lack of specificity in Dr. Canale's treatment notes regarding Santiago's limitations is a valid basis to give his MSS opinions less than controlling weight, *see Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014), the ALJ's selection of isolated episodes of improvement to significantly discount the opinions runs afoul of the Regulations. Substantial evidence on the record as a whole does not support the ALJ's decision to accord this treating source's opinions only little weight.

Moreover, other than Dr. Canale's opinions, there is no medical evidence in the record regarding the degree to which Santiago's mental impairments limit his functional abilities. Indeed, with the ALJ giving little weight to Dr. Canale's MSS opinions and his finding that the treatment notes of record lack specificity, it is unclear as to what medical evidence the ALJ relied on to determine Santiago's RFC. *See Lauer v. Apfel*, 245 F.3d 700, 705-06 (8th Cir. 2001). I disagree with the Commissioner's contention that a psychiatric review technique form (PRTF) completed in April 2016 by Dr. Alan Aram, a psychological consultant for disability determinations, provides sufficient medical evidence to support the ALJ's decision. (*See* Tr. 86-87.) Dr. Aram rendered no opinion regarding any

functional limitations and made no mental RFC assessment. (*See id.*) Further, Dr. Aram lacked both the opportunity to see Dr. Canale's post-2016 treatment records and the benefit of Dr. Canale's MSS. Finally, Dr. Aram never examined Santiago. This PTRF therefore does not constitute medical evidence upon which the ALJ could base his RFC assessment. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (opinion of non-treating, non-examining physician who reviewed reports is not "*medical* evidence about how [claimant's] impairments affect his ability to function now.") (emphasis in *Nevland*).

An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). The ALJ failed to engage in this process here. Instead, the ALJ merely summarized the evidence of record and declared what he credited to support his RFC findings. He engaged in no discussion or analysis of the evidence as it related to what Santiago is able to do despite his impairments. And the inconsistencies cited by the ALJ to substantially discount the weight given to Dr. Canale's medical opinions and to Santiago's statements of symptoms are insufficient to support his conclusions.

Nor did the ALJ resolve the ambiguities in the record. Dr. Canale's failure

to cite specific limitations in his treatment notes does not *ipso facto* render little value to his Mental MSS opinions. And while it cannot be conclusively said that the opined marked and extreme limitations included in the MSS are consistent with other evidence of record, it also cannot be said that they are inconsistent with other evidence of record. Other than Dr. Canale's MSS, there simply is no medical evidence in the record regarding Santiago's functional limitations.

D.    Conclusion

The ALJ erred in his evaluation of Santiago's statements of symptoms, which calls into question the resulting RFC assessment because it may not include all of Santiago's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). The ALJ erred in his analysis of Dr. Canale's December 2017 Mental MSS, resulting in an ambiguous record that lacked sufficient medical evidence upon which to assess Santiago's RFC. Finally, the ALJ failed to properly discuss and describe how the evidence supported his RFC conclusions and failed to properly resolve any material inconsistencies or ambiguities in the evidence of record. I will therefore remand this matter to the Commissioner for further proceedings.

Upon remand, the Commissioner shall obtain and provide the parties an opportunity to submit additional medical evidence that addresses Santiago's ability to function in the workplace, which may include contacting Santiago's treating

mental health care providers to clarify his limitations and restrictions in order to ascertain what level of work, if any, he is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006). The ALJ is also permitted to order additional examinations and tests to assist in making an informed decision regarding the extent to which Santiago's impairments, both severe and non-severe, affect his ability to perform work-related activities. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); 20 C.F.R. § 404.1517. Any evaluation of medical opinion evidence, including Dr. Canale's December 2017 Mental MSS, must be based on all of the § 404.1527(c) factors, including the length of the treatment relationship, the extent of the source's knowledge of Santiago's impairments, and the nature of the treatment provided.

Upon receipt of this additional evidence, the ALJ must reevaluate Santiago's RFC, which shall include a reassessment of Santiago's subjective statements of symptoms. This reevaluated RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion of the evidence in a manner that shows how the evidence supports each RFC conclusion.

Although I am aware that the ALJ's decision as to non-disability may not change after obtaining and properly considering all relevant evidence and undergoing the required analysis, the determination is nevertheless one that the Commissioner must make in the first instance. *See Pfitzer v. Apfel*, 169 F.3d 566,

569 (8th Cir. 1999).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 6th day of March, 2020.